## SIEMSSEN *et al. v.* BOFER.

A non-resident alien cannot inherit land in this State, and consequently cannot maintain ejectment.

The treaty between the United States and the Hanseatic Towns has not enlarged the rights of natives of those Towns, in this respect, as the treaty only gives them the right to dispose of land, which they are prevented from inheriting by their character as aliens.

The provisions of the Constitution giving to aliens, who are *bona fide* residents, the right to inherit, by the rules of construction excludes non-resident aliens.

By Murray, C. J., *dubitante,* whether the decision of this Court in the case of Gerke *v.* Clarke, confirming the constitutionality of a similar treaty, is correct.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action of ejectment brought by the plaintiffs, who are non-resident aliens, residents of the Hanseatic Town of Lubeck. The agreed statement shows that plaintiffs claim the land as the heirs of Henry Hyer, a native of Lubeck, but a resident of the city of San Francisco, where he died in 1853, seized of the land in question, intestate, leaving the plaintiffs as his lawful heirs. The question submitted is the right of the plaintiffs to maintain the action, under the treaty between the United States and the Hanseatic Towns. The Court below gave judgment for plaintiffs. Defendant appealed.

*Sidney V. Smith,* for Appellant.

The appellant contends, that inasmuch by the laws of the State of California no non-resident alien can enter into the possession of lands in this State, either by himself or others, so he cannot have an action of ejectment, the effect of which is, both from the prayer of the com-

plaint in such action, and from the judgment rendered therein, to give him or his agent the possession of the land sought by him.

By the Common Law of England, which by statute is made part of our law, an alien cannot hold lands, much less can he inherit them.

The common law in this respect is somewhat modified by section 17 of Art. I of the Constitution of this State, which provides that "Foreigners who are or who hereafter may become *bona fide* citizens of the State, shall enjoy the same rights in respect to the possession, enjoyment and inheritance of property, as native born citizens."

As the respondents in this case are not residents in the State at all, and never have been, the modification of the doctrine of the common law does not apply to them.

Now it will be observed that the language of the treaty is guarded in its terms. In the case of personal property, the aliens are rendered capable of not only inheriting, but of taking it into their possession by themselves, or by their agents; but where real estate is spoken of, no such language is used; on the contrary, "if the said heirs are prevented from entering into the possession on account of their character of aliens," then three years are allowed them to dispose of the same; that is, their right to the inheritance, which word precedes the last quotation.

It being clear that by our laws, no non-resident alien can hold real estate, or bring an action of ejectment for its possession, it is equally clear that the treaty does not give it to them. All that it does give is the right to dispose of the inheritance.

If there were any law of this State which prohibited maintainance, or champerty, or if the common law in that respect were in force here, then some show of reason might be given for this action, since under such a state of things, no deed could be made by a person out of possession.

But on the contrary, by the 34th section of the Act concerning conveyances, (Laws of 1850, p. 249,) a person out of possession is authorized to make a deed, and thereby convey the estate as fully as if in possession.

*Campbell, Taylor & Beckh,* for Respondents.

It is admitted that the ancestor of the respondents was the owner and possessor of the property in question, in his lifetime, and that after his death, the appellant took possession as a squatter; and the pretence under which he seeks to sustain himself is, that the appellees are non-resident foreigners, and cannot inherit, apart from any treaty stipulation; and throwing that branch of the case entirely out of view for the present, it seems that the point in controversy has been expressly determined in the People *v.* Folsom, decided at the October Term, 1855.

Again, the treaty securing the right to dispose of the property within three years after the death of the ancestor, necessarily confers the right of possession, up to the time of the sale. Any other construction would be narrow and absurd. But it is unnecessary to discuss the question, as the case above alluded to settles the matter.

The opinion of the Court was delivered by Mr. Chief Justice Murray. Mr. Justice Terry concurred.

This was an action of ejectment in the Court below. The plaintiffs are non-resident aliens; and the only question involved, is whether, in such capacity, they can maintain an action of ejectment in the Courts of this State.

By treaty stipulations between the United States and the Hanseatic towns of Lubeck, Bremen and Hamburg, it is provided : " That the citizens of each of the contracting parties shall have power to dispose of their personal goods within the jurisdiction of the other, by sale, donation or otherwise, and their representatives, being citizens of the other party, shall succeed to their said personal goods, whether by testament or ab intestate, and they may take possession thereof, either by themselves, or others acting for them, and dispose of the same at their will ; paying such dues only as the inhabitants of the country wherein said goods are, shall be subject to pay in like cases. And if, in case of real estate, the said heirs would be prevented from entering into the possession of said inheritance on account of their character of aliens, there shall be granted to them the term of three years to dispose of the same as they may think proper, and to withdraw the proceeds without molestation, and exempt from all duties of detraction on the part of the government of the respective States."

In the case of The People v. Gerke & Clarke, which was a proceeding in the nature of an inquest of office, this Court affirmed the constitutionality of a similar treaty stipulation, between the United States and the kingdom of Prussia. I did not participate with the majority of the Court in that opinion, and entertain great doubts of its correctness.

In my opinion, the treaty-making power can only be coeval with the express grant of power to the Federal Government, and can never be extended, by implication, to the reserved powers of the States, or matters which belong to State Sovereignty, or the right which appertains to each State to govern her own domestic concerns, and establish her own police regulations; neither can the exercise of this power, on the part of the President and Senate, be extended to matters which are the proper subject of congressional legislation; "for it would," as Mr. Jefferson truly remarks, in his letter to Mr. Monroe, in 1796, upon the subject of the British treaty, "be virtually transferring the powers of legislation from the President, Senate and House of Representatives, to the President, Senate and Piamingo, and any other Indian, Algerine or other chief."

The true rule of interpretation, in my opinion, is, that whenever the treaty embraces matters which are the subject of legislation by Congress, it will require an act of legislation to carry the treaty into effect; otherwise the House of Representatives is a useless appendage to the political machinery of our government, and powers which are expressly prohibited to Congress, or reserved to the States, may be exercised through the instrumentality or omnipotence of the treaty-making power.

To assert the proposition that the President and Senate are above the

Siemssen *v.* Bofer.

Constitution in this particular, and that they may do in this behalf, what the President, and both Houses of Congress cannot do, would be destructive of the government; for, under the cover of a resort to the treaty making power, every outrage and injustice which illiberality can conceive, or fanaticism execute, may be perpetrated.    By a treaty with England, her free black citizens may be introduced into South Carolina and other slave States of the Union, contrary to the police regulations of those States.    The Asiatic, and the convicts of the penal colonies of the South Pacific, may be introduced into California on the same footing as the intelligent and virtuous population of the more favored portions of Europe, and every branch of trade, agriculture, commerce and manufactures, may be prostrated at the feet of this unconstitutional mastodon.    Nay, more; by a treaty of amity and friendship with the Emperor Soulouqe of Hayti, every slave in the Southern States may be emancipated, and turned loose upon their present masters.

Where, let it be asked, is the exercise of this power to end, and who is to be the judge, whether the objects intended to be compassed are strictly within the treaty making power?    Already have we witnessed in this State, one disgraceful exhibition of the extent to which the power may be claimed; and the right of a party to be confronted with his witnesses, and have process for their attendance in Court, a right guarantied by the Constitution and laws of the United States, and the State of California, is claimed to have been abrogated by treaty stipulations with France.

It cannot be contended, with any show of reason, that the Federal Government took this grant of power in the enlarged sense in which it is exercised by England, and the nations on the continent of Europe; or that she is vested with the same plenary powers that the individual States were before the adoption of the Constitution.

The political structure of our government forbids such an idea.    The power must be construed in reference to the powers delegated to the United States, and those reserved to the States, and must be further limited to objects which are the peculiar and proper subject matter of treaty stipulation.

The exercise of this power under the Constitution, can scarcely extend beyond that of declaring war, making peace, regulating commerce, and adjusting national misunderstandings or differences; and for the execution of such purposes, the power to alter the rules of descent, to change the domestic policy of a State, and to alter the laws of evidence are not incidents, any more than the right to abolish slavery, or any of the other acts we have enumerated. ·

It is not necessary for the purpose of this decision, to examine this question further, as we are satisfied, giving full force to the treaty, the plaintiff cannot recover in an action of ejectment.

The seventeenth section of Article I of the Constitution of this State provides, that "aliens who are or may become *bona fide* residents of this State, shall be entitled to enjoy the same rights, in respect to the possession, enjoyment and inheritance of property as native born citi-

17

zens." By the rules of construction heretofore adopted, this clause negatives any supposed right which non-resident alien heirs would otherwise have to inherit.

It will be observed that the treaty gives to the heirs the right of possession of personal chattels, but not of real estate, which the party has three years to dispose of. It is said that this is a mere empty privilege, worthless without it is coupled with the right of possession.

The laws of this State expressly authorize sales of real estate by parties out of possession, so that the party may freely exercise the privileges guarantied by the treaty. We are of opinion that the Constitution expressly prohibits the plaintiffs from inheritance, and that being thus incapacitated, they cannot maintain an action of ejectment, and that their rights have not been enlarged in this respect by the treaty.

Judgment reversed.